**The GOODYEAR TIRE & RUBBER COMPANY and Affiliates, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 88–1201.

United States Court of Appeals, Federal Circuit.

Aug. 31, 1988.

Barring Coughlin, Thompson, Hine and Flory, of Cleveland, Ohio, for plaintiff-appellant. With him on the brief was Stephen L. Buescher. Also on the brief was Deborah Z. Read, Thompson, Hine and Flory, of counsel.

David M. Moore, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and Robert S. Pomerance.

Before NEWMAN and BISSELL, Circuit Judges, and RE, Chief Judge.[*]

BISSELL, Circuit Judge.

The Goodyear Tire & Rubber Company and Affiliates (collectively, Goodyear) appeal the decision of the United States Claims Court, *Goodyear Tire & Rubber Co. v. United States*, 14 Cl.Ct. 23 (1987), granting summary judgment to the United States and holding that Goodyear was not entitled to a tax refund. Judgment was entered dismissing the complaint. We reverse.

## BACKGROUND

Goodyear Tire & Rubber Company (Goodyear U.S.) is the parent of the consolidated group of United States corporations constituting the appellant. The Goodyear Tyre & Rubber Company (Great Britain) Limited (Goodyear U.K.) is a British corporation and a wholly owned subsidiary of Goodyear U.S.

During 1970 and 1971, Goodyear U.K. derived profits from business activities it conducted in Great Britain and, to a lesser extent, the Republic of Ireland. In each of these years, Goodyear U.K. first paid income taxes on profits to the governments of Great Britain and Ireland, and then dis-

---

[*] The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a) (Supp. IV 1986).

tributed dividends to Goodyear U.S. When Goodyear U.S. reported these dividends for American tax purposes, it claimed foreign tax credits as allowed under section 902 of the Internal Revenue Code of 1954.

In 1972 and 1973, Goodyear U.K. incurred net operating losses. The 1973 loss is particularly illustrative of the issue presented because that loss included British tax deductions[1] that were not allowable under American tax laws. For British tax purposes, the 1971 and 1970 records of Goodyear U.K. were adjusted to "carry back" the 1973 loss.[2] These loss carryback adjustments resulted in the British government refunding to Goodyear U.K. the tax payments it had made for 1971 and 1970.

In light of those refunds, the Commissioner of the Internal Revenue Service (IRS) redetermined, for foreign tax credit purposes, the 1971 and 1970 records of Goodyear U.S. The IRS based its redetermination on American tax law. Because American law did not recognize the 1973 deductions permitted under British law, the IRS' redetermination converted the 1973 Goodyear U.K. loss to a profit, obviating the need to carry back any losses to 1971 and 1970. Therefore, under American tax law, Goodyear U.K. recorded profits for 1971 and 1970, yet because of the tax refunds, there was effectively no longer any foreign tax assessed on those profits. The IRS accordingly determined that Goodyear U.S. was not entitled to the foreign tax credits previously taken because there was no double taxation. Consequently, the IRS assessed $791,240.72[3] against Goodyear U.S. to recover the resultant tax deficiency.

Goodyear U.S. paid the deficiency and then filed timely refund claims. The IRS denied the refund claims in 1983. Thereafter, Goodyear U.S. filed suit in the United States Claims Court seeking a refund.

Goodyear U.S. asserted that the IRS had erred by incorrectly applying American instead of British tax law in its redetermination of accumulated profits.

The Claims Court (1) held that accumulated profits under section 902 must be calculated in accordance with American tax law, and (2) found Goodyear U.S. was not entitled to a tax refund. Goodyear U.S. appeals the Claims Court decision.

### ISSUE

Whether 26 U.S.C. § 902(a) requires accumulated profits to be computed under American or foreign tax law.

### OPINION

Under section 902(a), foreign tax credits are computed in the following manner:

[A] domestic corporation which owns at least 10 percent of the voting stock of a foreign corporation from which it receives dividends in any taxable year shall be deemed to have paid the same proportion of any income, war profits, or excess profits taxes paid or deemed to be paid by such foreign corporation to any foreign country or to any possession of the United States, on or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends (determined without regard to section 78) bears to the amount of such accumulated profits in excess of such income, war profits, and excess profits taxes (other than those deemed paid).

26 U.S.C. § 902(a) (1982). This statute establishes a relationship between the foreign taxes paid (T), the dividends received by the domestic corporation (D), and the

---

1. One deduction permitted accelerated depreciation writeoffs, and the other permitted a special inventory reduction.

2. A 1972 loss eliminated the 1972 accumulated profits and a portion of the 1971 accumulated profits. Therefore, the 1973 loss was applied back to 1971 and 1970 accumulated profits. The 1973 loss carry-back eliminated all accumu-

lated profits for 1971, and substantially reduced the accumulated profits of 1970.

3. The recomputation resulted in tax assessments of $323,654 (1970) and $237,616 (1971) plus interest penalties of $132,611.66 (1970) and $97,-359.06 (1971) to total $791,240.72.

accumulated profits (P) from which the dividends were derived. This relationship is represented by the following mathematical expression:

**Section 902 Formula**

$$\begin{array}{ccc}
\text{(C)} & \text{(T)} & \text{(D) Dividend Received} \\
\text{Section} & \text{Foreign Income} & \text{by Domestic Parent} \\
\hline
902 & \text{Tax Paid By} & \text{Accumulated Profits of} \\
= & & \times \\
\text{Credit} & \text{Foreign Subsidiary} & \text{(P) the Foreign Subsidiary} \\
& & \text{Minus Foreign Tax Paid}
\end{array}$$

*See, e.g., Champion Int'l Corp. v. Commissioner,* 81 T.C. 424, 429 (1983); *H.H. Robertson Co. v. Commissioner,* 59 T.C. 53, 77 (1972), *aff'd,* 500 F.2d 1399 (3d Cir. 1974).

Section 902(c)(1) recognizes the power of foreign countries to tax "gains, profits, and income" derived within their territories. "T" in the above equation, therefore, is the amount of tax actually imposed on a foreign subsidiary by a foreign government under foreign tax law. *See Biddle v. Commissioner,* 302 U.S. 573, 578, 58 S.Ct. 379, 381, 82 L.Ed. 431 (1938) (stating that foreign law governs when express language or necessary implication of American statute requires). The parties do not dispute this.

The parties do, however, contest whether American or British law controls the definition of "accumulated profits"—"P" in the equation. The government maintains that American law must govern the definition of "P", while Goodyear asserts that British law controls. In resolving this issue, the court notes that the term "accumulated profits" is used in the Internal Revenue Code only with reference to foreign tax credits. For the reasons discussed below, we agree with Goodyear.

Section 902(a) states that a parent corporation may obtain a tax credit on *"taxes paid ... by such foreign [subsidiary] corporation to any foreign country ... on or with respect to the accumulated profits of such foreign corporation...."* (Emphasis added.) The definition of "accumulated profits" provided in section 902(c) similarly relates the foreign taxes paid to accumulated profits:

> For purposes of this section [Foreign Tax Credit], the term *"accumulated profits" means,* with respect to any foreign cor-

poration, *the amount of* its *gains, profits, or income computed without reduction by* the amount of the income, war profits, and excess profits *taxes imposed on or with respect to such profits or income* by any foreign country or by any possession of the United States. (Emphasis added.)

26 U.S.C. § 902(c)(1) (1982)

These provisions establish that "P" is the actual basis on which the foreign sovereign assesses tax liability. Because "T" is the actual tax imposed by the foreign government, "P" must also be the basis to which the foreign government applies its own tax law in computing "T". Rev.Rul. 74–310, 1974–2 C.B. 205 (foreign income tax to be used in section 902 computation is amount of tax imposed on total profits as measured by foreign standards). For this reason, we find the plain meaning of the statute requires "P" to be determined under foreign law.

Congress' rationale for enacting section 902 supports our interpretation. "[T]he fundamental purpose of the foreign tax credit is the elimination of international double taxation." *Robertson,* 59 T.C. at 74; *see also American Chicle Co. v. United States,* 316 U.S. 450, 452, 62 S.Ct. 1144, 1145, 86 L.Ed. 1591 (1942); *National Cash Register Co. v. United States,* 400 F.2d 820, 825–26 (6th Cir.1968), *cert. denied,* 394 U.S. 917, 89 S.Ct. 1188, 22 L.Ed.2d 451 (1969); *Steel Improvement & Forge Co. v. Commissioner,* 36 T.C. 265, 282 (1961), *rev'd on other grounds,* 314 F.2d 96 (6th Cir.1963). The IRS position that accumulated profits must be determined under American tax law, however, can defeat this purpose by severing the relationship between "T" and "P".

In the instant case, because American tax law did not recognize the 1973 loss, the IRS-computed accumulated profits of Goodyear U.K. for 1970 and 1971 were higher than the amounts recognized under British law. Adopting the IRS view inflates "P", the denominator in the section 902(a) formula. When the numerator "D" is constant, an increase in the denominator will reduce the maximum amount of tax credit available. Such a reduction prohibits the taxpayer from being able to obtain a tax credit for the full amount of the foreign taxes paid. Therefore, the tax payments already made to the foreign country will not be fully recoverable as tax credits to reduce the subsequent tax assessments by the United States government. This effectively results in a double taxation that contravenes the purpose of the statute.

In support of its position, the IRS suggests a long history of precedents for using American law to determine accumulated profits. However, the cases presented in support of the IRS' position fail to address the controversy raised in the instant case. Rather, the cases cited recognize the undisputed and well-settled fact that "the determination of a foreign corporation's *earnings and profits* [not accumulated profits], for purposes of the imposition of the U.S. tax, is to be made by the application of U.S. tax principles." *Robertson*, 59 T.C. at 69 (emphasis added); *Steel Improvement*, 36 T.C. at 277, *rev'd on other grounds*, 314 F.2d 96 (1963); *see also Untermyer v. Commissioner*, 24 B.T.A. 906, 912 (1931), *aff'd*, 59 F.2d 1004 (2d Cir.), *cert. denied*, 287 U.S. 647, 53 S.Ct. 92, 77 L.Ed.2d 559 (1932). These cases only support the distinction between computing *accumulated profits* for foreign tax credit purposes, and computing *earnings and profits* for dividend characterization purposes.

The one unpublished case, not cited by the IRS, but which supports its outcome, *Pacific Gamble Robinson Co. v. United States*, No. 5155, 62–1 U.S. Tax Cas. (CCH) § 9,160 (W.D.Wash. Dec. 15, 1961) (plaintiff was not entitled to foreign tax credit when foreign tax for period in which dividend arose was refunded), was specifically rejected by the Tax Court in *Champion*, 81 T.C. at 443 n. 29.

The IRS nevertheless relies on *Champion* for the holding that *"[a]ccumulated profits* are determined under American law rather than foreign law." *Champion*, 81 T.C. at 447 (citing *Steel Improvement*, 36 T.C. at 277) (emphasis added). However, such reliance is misplaced. The *Champion* dictum misstated the actual text of *Steel Improvement* which stated that "accumulated *earnings and profits* ... are to be determined under American rather than foreign law." *Steel Improvement*, 36 T.C. at 277 (emphasis added). The determination of "accumulated earnings and profits" for United States income tax purposes is distinguishable from the determination of "accumulated profits" for deemed foreign tax credit purposes. Absent this point of confusion, *Steel Improvement* and *Champion* are consistent with this court's position.

### CONCLUSION

In light of the foregoing, we reverse, as a matter of law, the judgment of the Claims Court and find that "accumulated profits," for purposes of determining deemed paid foreign tax credits, are to be based upon foreign law.

REVERSED